UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARITA KEENE,

    Plaintiff,

v.
                                    Case No. 1:22-cv-622
                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplemental security income (SSI).

The present case involves plaintiff's application for SSI filed on December 13, 2019. PageID.45. Plaintiff initially identified her disabling condition as asthma. PageID.232. In addition, at the administrative hearing, plaintiff identified the biggest factors that prevented her from engaging in full-time employment as:

> My breathing and having use of my right hand.  Just I don't have the good use of it anymore.  But most definitely my breathing.  Because I can't help with my own self.

PageID.72. Prior to applying for DIB, plaintiff completed the 12th grade[1] and had past relevant work as a child monitor. PageID.56, 233. An administrative Law Judge (ALJ) reviewed plaintiff's

---

[1] The Court notes that while plaintiff's application reflects that she completed the 12th grade, plaintiff testified at the administrative herring that she completed the 11th grade and has not attempted to earn a GED. PageID.69.

1

application de novo and entered a written decision denying benefits on January 21, 2021. PageID.45-58. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

3

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[2] At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of December 13, 2019. PageID.48. At the second step, the ALJ found that plaintiff had severe impairments of asthma, diabetes mellitus with steroid-induced hyperglycemia, neuropathy, a

---

[2] At step four, the ALJ found that, through the date last insured, the claimant was capable of performing her past relevant work as a child monitor. PageID.56. At that point, plaintiff was determined to be not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv). However, the ALJ proceeded to step five where she made an alternative finding that there were other jobs that existed in significant numbers in the national economy that plaintiff also could have performed. PageID.56-57. The Court finds no authority for an ALJ to make such an alternative determination. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process*. The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow: . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 416.960(b).

20 C.F.R. § 416.920(a)(4)(iv) (emphasis added). *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)). Because the ALJ's alternative determination at step five is not authorized by the regulations, the Court will not address that finding.

history of a right hand injury, and stress incontinence. *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.50.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can frequently handle with the right upper extremity and balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally finger and feel with the right upper extremity; no climbing of ladders, ropes, and scaffolds; no exposure to unprotected heights, dangerous moving machinery, extreme cold, heat, humidity, or wetness; no concentrated exposure to environmental irritants (to include fumes, dusts, gases, odors) or poorly ventilated areas; and no loud noise above a level three, only moderate noise.

PageID.51. The ALJ also found that,

> The claimant is capable of performing past relevant work as a Child Monitor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

PageID.56. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from December 13, 2019 (the date she filed the application) through January 21, 2021 (the date of the decision). PageID.58.

### III. DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity (RFC) findings are contrary to law and not supported by substantial evidence. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 416.945. The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

5

Plaintiff has raised four related errors on appeal to support this claim.

**A. The ALJ's analysis of the medical opinions did not comport with 20 C.F.R. § 416.920c and her corresponding findings are not supported by substantial evidence.**

**B. The ALJ's finding that the opinions of the non-examining physicians were more persuasive than the opinions of James R. Smith, M.D. and Kayla Beck FNP-BC is not supported by substantial evidence.**

**C. The RFC determination failed to consider all the effects of plaintiff's well-documented impairments as required by 20 C.F.R. § 416.920a and Social Security Rulings (SSR) 98-6p and 85-15.**

**D. The RFC finding did not adequately address all plaintiff's subjective symptoms and proffered evidence thereof.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 416.920c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors. *See* 20 C.F.R. § 416.920c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section,

6

as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(2).[3] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 416.920c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 416.920c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

The gist of plaintiff's claim is that the ALJ improperly found the opinions of the non-examining physicians as more persuasive than the opinions of plaintiff's treating physician and FNP. As discussed, the main issues here are the effect of plaintiff's asthma and plaintiff's ability to use her right hand and arm.

---

[3] The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

The ALJ held the administrative hearing on November 9, 2020, and entered her decision on January 21, 2021.  PageID.45-90.  With respect to the non-examining physicians, the ALJ stated in part,

> Francis Grubelich, M.D., a State agency consultant, opined that the claimant could perform work at the light exertional level with environmental limitations (1A). Upon reconsideration, Loren Levy, M.D., a State agency consultant, opined that the claimant could perform work at the light exertional level with postural, manipulative, and environmental limitations (3A). These opinions are found to be mostly persuasive, as they were supported by detailed explanations and were mostly consistent with the overall evidence.

PageID.54.

Plaintiff contends that these opinions from Dr. Grubelich and Dr. Levy, rendered on March 27, 2020 (PageID.100-104) and June 27, 2020 (PageID.115-121), respectively, predated significant hospitalizations on August 25, 2020 (PageID.855) and September 17, 2020 (PageID.927).  "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record."  *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted).

As an initial matter, both Dr. Smith's opinion (May 21, 2020 (Exh. 7F) (PageID.811-815)) and FNP Beck's opinion (May 13, 2020 (Exh. 5F, PageID.736-740) also pre-dated the hospitalizations, and were given after Dr. Grubelich's opinion and before Dr. Levy's opinion.  In this regard, Dr. Levy reviewed both Dr. Smith's opinion and FNP Beck's opinion. PageID.116-121.

The ALJ addressed Dr. Smith's opinion as follows:

8

> James R. Smith, M.D., opined that that claimant could lift and carry twenty pounds or more with the left upper extremity, but no lifting with the right upper extremity; no use of the right upper extremity for grasping, fine manipulation, or grasping; with postural limitations; and would be off task more than thirty percent of the day (7F). This opinion is not found to be persuasive. While it was supported by an explanation, the opined limitations are inconsistent with the overall evidence. In regards to her respiratory condition, the claimant reported that she was doing well with treatment (1F/49). She had normal lung exams at times (1F/39, 58, 90). She also improved with treatment while hospitalized (3F/21, 10F). Her diabetes mellitus was considered as being without complications (1F/10, 6F/2). Additionally, she denied having any blurred vision or increased fatigue at times (1F/61, 88). She also denied having headaches at several exams (3F/12, 13, 6F/39, 10F/125). She had normal neurovascular exams, including intact reflexes and sensation (1F/75, 80, 10F/78). The claimant had normal musculoskeletal range of motion (1F/90, 10F/6). Further, no gait deficits were noted (1F/90, 10F/6). In regards to her hand injury, the claimant made some improvements with physical therapy (4F/8, 10). Her grip strength was thirty-five ponds [sic] in the left hand and twenty-one pounds in the right hand (9F/6). In regards to her stress incontinence, she underwent pelvic floor therapy and a provider noted that she had marked improvement in her stress incontinence with pelvic floor retraining (4F/11). The grip strength is inconsistent with the reduction in lifting and carrying or opined inability to use the right hand for grasping, reaching, or fine manipulations. She had a normal thought process with normal thought content (6F/16). The claimant also had normal judgment (1F/90, 93). Moreover, she had normal memory and cognition (10F/55). As such, the overall evidence does not establish the need for a limitation regarding time off task. Therefore, this opinion is not found to be persuasive.

PageID.55.

The ALJ addressed FNP Beck's opinion as follows:

> Kayla Beck, FNP-BC, opined that the claimant needed to change positions after sitting for more than three hours or standing for one hour; could sit for about eight hours; stand and walk for about four hours; requires unscheduled breaks; lift and carry up to ten pounds occasionally; cannot use her right hand for grasping and rarely for fine manipulation or reaching; would miss more than five days per month; but did not require an assistive device or need to elevate her legs (5F). This opinion is not found to be persuasive. While it was supported by an explanation, the opined limitations are inconsistent with the overall evidence. In regards to her respiratory condition, the claimant reported that she was doing well with treatment (1F/49). She had normal lung exams at times (1F/39, 58, 90). She also improved with treatment while hospitalized (3F/21, 10F). Her diabetes mellitus was considered as being without complications (1F/10, 6F/2). Additionally, she denied having any blurred vision or increased fatigue at times (1F/61, 88). She also denied having headaches at several exams (3F/12, 13, 6F/39, 10F/125). She had normal

9

> neurovascular exams, including intact reflexes and sensation (1F/75, 80, 10F/78). The claimant had normal musculoskeletal range of motion (1F/90, 10F/6). Further, no gait deficits were noted (1F/90, 10F/6). In regards to her hand injury, the claimant made some improvements with physical therapy (4F/8, 10). Her grip strength was thirty-five ponds in the left hand and twenty-one pounds in the right hand (9F/6). In regards to her stress incontinence, she underwent pelvic floor therapy and a provider noted that she had marked improvement in her stress incontinence with pelvic floor retraining (4F/11). The overall evidence is not consistent with the opined limitations regarding the reduction in standing and walking, need for unscheduled breaks, or absenteeism. The grip strength is inconsistent with the reduction in lifting and carrying or opined inability to use the right hand for grasping, reaching, or fine manipulations. Therefore, this opinion is not found to be persuasive.

PageID.54-55.

Based on this record, the Court concludes that the ALJ's decision is supported by substantial evidence.  As discussed, Dr. Levy's opinion considered both the opinions of Dr. Smith and FNP Beck (PageID.116-121).  In addition, consistent with *Brooks*, 531 Fed. Appx. at 642, the ALJ indicated that she reviewed the complete medical record, including plaintiff's hospitalizations in August and September, 2020:

> The claimant had been diagnosed with asthma. She reported having a cough with wheezing at times (1F/5, 55, 3.F/17, 8F/1, 12). She also complained of dyspnea at rest and with exertion (1F/5, 25, 3F/12, 10F/1). Aggravating factors include weather changes, environmental allergies, exercise, and respiratory infections (1F/10). The claimant experienced exacerbations requiring emergent treatment, including a hospitalization in February 2020, August 25-29, 2020, and September 17-20, 2020, along with breathing treatments and steroid therapy (3F/17, 20, 10F/1, 74).

PageID.52.  Accordingly, plaintiff's claims of error are denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 25, 2023                /s/ Ray Kent
                                         RAY KENT
                                         United States Magistrate Judge